UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

CHRISTOPHER BROWN,

Petitioner,

v.

E. K. McDANIEL, *et al.*,

Respondents.

Case No. 3:09-cv-00557-MMD-VPC

ORDER

This habeas corpus action, brought by petitioner Christopher Brown, is before the Court for resolution with respect to the merits of petitioner's claims raised in the first amended petition for writ of habeas corpus (ECF No. 12). Respondents have answered (ECF No. 51) and petitioner has replied (ECF No. 57). The Court also granted petitioner leave to file supplemental authorities. (ECF No. 63.) The Court finds that petitioner is not entitled to relief, and the Court denies the petition.

## I.    PROCEDURAL HISTORY

After a jury trial in the Second Judicial District Court of the State of Nevada, petitioner was convicted of first-degree murder with the use of a deadly weapon. (Exh. 24, ECF No. 14-4.)[1] Petitioner appealed, and the Nevada Supreme Court affirmed. (ECF No. 14-11.) Before the direct appeal concluded, petitioner filed in the state district court a

---

[1]The Court will use the docket number in its citations instead of referring to the exhibit number. For exhibits at ECF No. 13, 14, and 24, the attachment numbers in the docket report and the ECF docket numbers electronically inserted at the top of each page are mismatched. For example, Exhibit 24 is listed as attachment #3 to ECF No. 14, but the top of each page states "ECF No. 14-4." A person wishing to review an exhibit should select the link associated with the labeling in the docket report and disregard the attachment number. Exhibits at ECF No. 32 and 42 do not have this problem.

post-conviction petition for a writ of habeas corpus. (ECF No. 14-8.) The state district court appointed counsel, who filed a supplemental petition. (ECF No. 14-13.) The state district court denied the petition. (ECF No. 14-17.) Petitioner appealed, and the Nevada Supreme Court affirmed. (ECF No. 14-22.)

Petitioner then commenced this action. This Court appointed counsel, who filed the first amended petition. (ECF No. 12.) Respondents filed a motion to dismiss. (ECF No. 21.) The Court dismissed grounds 3(A) and 5 because they were procedurally defaulted. (ECF No. 28.) The Court found that petitioner had not exhausted his state-court remedies for grounds 2(A), 2(B), 2(D), 2(G), 3(B), 3(C), 3(D) and 3(E). (*Id.*) The Court stayed the action while petitioner pursued more post-conviction remedies in the state courts. (*Id.*)

After the second round of post-conviction proceedings concluded, the Court reopened this action. (ECF No. 33.) Respondents filed another motion to dismiss. (ECF No. 36.) The Court dismissed grounds 2(A), 2(B), 2(D), 2(G), 3(C) and 3(E) because they were procedurally defaulted. (ECF No. 8.) The Court found that grounds 3(B) and 3(D) were procedurally defaulted, but petitioner's arguments for cause to excuse those procedural defaults were the claims of ineffective assistance of counsel in grounds 2(E) and 2(C), respectively. (*Id.*) The Court deferred ruling upon grounds 3(B) and 3(D) until it could address the merits of the claims of ineffective assistance of counsel. (*Id.*)

## II.    STANDARD OF REVIEW

This action is governed by the Antiterrorism and Effective Death Penalty Act (AEDPA). 28 U.S.C. § 2254(d) sets forth the standard of review under AEDPA:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "By its terms § 2254(d) bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions in §§ 2254(d)(1) and (d)(2)." *Harrington v. Richter*, 562 U.S. 86, 98 (2011).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. "[A] federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.

The Supreme Court has explained that "[a] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam)). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 562 U.S. at 101 (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (describing the AEDPA standard as "a difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt") (internal quotation marks and citations omitted).

# III. DISCUSSION

## A. Ground 1

Ground 1 is a claim that the voluntary-intoxication jury instruction shifted the burden of proof. On this issue, the Nevada Supreme Court ruled:

> First, Brown contends that the jury instruction on voluntary intoxication improperly shifted the burden of proving intoxication, and therefore the lack of a specific intent to commit the crime, onto the defense. Brown objected to the following instruction:
>
>> The burden of proof is upon the defendant to show by a preponderance of the evidence that he was intoxicated to such an extent that he did not premeditate or deliberate.
>
> Defense counsel argued that the instruction "dilutes the State's burden of proving each and every element of the crime beyond a reasonable doubt." Brown, however, did not offer an alternative instruction. We agree with Brown and conclude that the instruction given by the district court was erroneous. Nevertheless, we further conclude that the error was harmless beyond a reasonable doubt.
>
> First, Brown did not present a defense based upon a lack of specific intent due to his voluntary intoxication. Brown presented evidence and corroborating testimony that he ingested drugs and alcohol on the day of the shooting; however, he did not argue that his ingesting rendered him unable to form the intent to kill. During opening arguments, defense counsel conceded that Brown shot the victim several times resulting in his death. But the theory of the defense, instead, was that "Brown was provoked. There was a sudden heat of passion." As further evidence of the defense theory, Brown did not offer the district court an alternative instruction on voluntary intoxication, or object to the instructions on manslaughter and self-defense, both of which were more consistent with his defense at trial. Therefore, we conclude that the erroneous instruction on voluntary intoxication did not affect Brown's substantial rights in any practical way.
>
> Second, Brown failed to demonstrate that he was entitled to a voluntary intoxication instruction. Under NRS 193.220, the jury is permitted to consider evidence of voluntary intoxication to negate specific intent. To obtain an instruction under NRS 193.220, Brown's burden of production was to show not only that he ingested drugs and alcohol, but also the intoxicating effect of the substances ingested and its resultant effect on the required mental state for first-degree murder. The level of intoxication must be so extreme as to preclude the formation of the intent required for the charged offense. Similar to the defense in *Garner v. State*, [116 Nev. 770, 6 P.3d 1013 (Nev. 2000),] Brown "did not present evidence on the effect that his consumption of drugs [and alcohol] had on his mental state."

(ECF No. 14-11 at 2-4.)

The Nevada Supreme Court was correct that petitioner did not present a defense of voluntary intoxication. Given that petitioner presented no defense of voluntary

4

intoxication, the voluntary-intoxication instruction could not have "'had substantial and injurious effect or influence in determining the jury's verdict.'" *Brecht v. Abrahamson*, 507 U.S. 619, 631, 638 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946). The error was harmless, and the Court will deny habeas relief on Ground 1.

### B.  Ground 2

Ground 2 contains claims of ineffective assistance of trial counsel and appellate counsel. The same person, Edward Horn, represented petitioner at trial and on direct appeal.

### 1.  Legal Standard

"[T]he right to counsel is the right to the effective assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 & n.14 (1970). A petitioner claiming ineffective assistance of counsel must demonstrate (1) that the defense attorney's representation "fell below an objective standard of reasonableness," and (2) that the attorney's deficient performance prejudiced the defendant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). "[T]here is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697.

A court considering a claim of ineffective assistance of counsel must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. *Id.* at 689. Moreover, where a state court previously adjudicated the claim of ineffective assistance of counsel, under *Strickland*, establishing that the decision was unreasonable is especially difficult. *See Harrington*, 562 U.S. at 104-05. In *Harrington*, the Supreme Court instructed:

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both highly deferential, [*Strickland*, 466 U.S. at 689]; *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is

"doubly" so, [*Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)]. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at 123, 129 S.Ct. at 1420. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Harrington*, 562 U.S. at 105; *see also Cheney v. Washington*, 614 F.3d 987, 994-95 (2010) (acknowledging double deference required with respect to state court adjudications of *Strickland* claims).

Petitioner argues that the standard of appellate review that the Nevada Supreme Court used is contrary to *Strickland*. In disposing of petitioner's ineffective-assistance claims, the Nevada Supreme Court wrote, for example, "Brown has not demonstrated that the district court's findings are not supported by substantial evidence or is not clearly wrong." (ECF No. 14-22 at 5.) Petitioner argues that these were applications of a substantial evidence standard that is contrary to *Strickland.*

In supplemental authorities, petitioner relies on *Hardy v. Chappell*, 849 F.3d 803 (9th Cir. 2017), to augment his argument. In that case, Hardy, along with two others named Reilly and Morgan, was convicted of two counts of first-degree murder and one count of conspiracy to commit murder to collect life-insurance proceeds from the deaths of Morgan's wife and child in California. The jury sentenced Hardy to death. After the conclusion of his direct review, which included an unsuccessful certiorari petition in the Supreme Court of the United States, Hardy filed a petition for a writ of habeas corpus in the California Supreme Court, alleging that his counsel, named Demby, provided ineffective assistance in the penalty phase of his trial. The California Supreme Court appointed a referee to make findings. The referee held an evidentiary hearing. Among the findings were revelations about an important prosecution witness, Calvin Boyd. Boyd had testified at trial that he declined to enter into the conspiracy to commit murder. The referee found that Boyd likely was involved in the conspiracy and might even have been one of the murderers. The referee also found that Hardy might not have been present at the murders. Based on those findings, Hardy filed another habeas corpus petition in the

1  California Supreme Court, this time alleging actual innocence and ineffective assistance

2  of counsel in both the guilt phase and the penalty phase. The California Supreme Court

3  decided that another referral for an evidentiary hearing was unnecessary. The California

4  Supreme Court also consolidated the two petitions into one proceeding. On the death-

5  penalty issue, the California Supreme Court granted relief because counsel performed

6  deficiently and petitioner suffered prejudice.[2] On the issue of petitioner's guilt, the

7  California Supreme Court held:

8    After weighing this evidence and considering what petitioner's trial would
     have looked like had he been represented by competent counsel . . . , we

9    conclude that although there is a reasonable probability the jury would not
     have convicted petitioner on the prosecution's proffered theory that he was

10   the actual killer, ample evidence remains that petitioner was guilty of the
     murders on the alternative theories that he conspired with, and aided and

11   abetted, Reilly, Morgan and others to commit the murders. As, according to
     their joint plan, Reilly, Boyd or possibly some third party killed the victims in

12   furtherance of their conspiracy to fraudulently obtain insurance proceeds,
     petitioner, as a coconspirator and aider and abettor, is as guilty of the

13   murders as if he stabbed the victims himself. Because petitioner would have
     been convicted of two first degree murders on these two theories of

14   derivative liability irrespective of Demby's unreasonable failure to
     investigate and present evidence of the Boyd connection, petitioner fails to

15   demonstrate he would have achieved a more favorable outcome at the guilt
     phase had Demby competently investigated the Boyd connection.

16   Accordingly, we conclude petitioner fails to demonstrate prejudice at the
     guilt phase flowing from Demby's deficient representation. (*Strickland,*

17   *supra*, 466 U.S. at pp. 687-688, 104 S. Ct. 2052.)

18  *In re Hardy*, 163 P.3d 853, 891-92 (Cal. 2007).

19      Hardy then filed a federal habeas corpus petition. The district court denied the

20  petition. On appeal, the Ninth Circuit Court of Appeals held that when the California

21  Supreme Court denied Hardy's petition, it used a substantial evidence standard that is

22  contrary to *Strickland. Hardy*, 849 F.3d at 819-20. After *de novo* review, the Ninth Circuit

23  directed the district court to grant the petition. In the alternative, the Ninth Circuit held that

24  the California Supreme Court applied *Strickland* unreasonably.

25      The procedural posture of *In re Hardy* differs from the procedural posture of

26  petitioner's case in one important respect. A person seeking post-conviction relief in the

27  California courts usually files an original petition for a writ of habeas corpus in the relevant

28  ────────────────
    [2]Ultimately, the prosecution decided not to seek capital punishment again.

superior court, then in the relevant court of appeal, and then in the California Supreme Court. Although each level of review is styled as a separate habeas corpus petition, in effect appellate review is given in the court of appeal and in the California Supreme Court. *See Carey v. Saffold*, 536 U.S. 214, 221-22 (2002). Hardy did not use that typical path of post-conviction review in California. He filed his state habeas corpus petitions directly and only in the California Supreme Court. The California Supreme Court's order did not effectively affirm a denial of a habeas corpus petition by the superior court. The California Supreme Court's order was the denial of Hardy's habeas corpus petition.

On the other hand, petitioner here followed the usual path of post-conviction review in Nevada. He filed his petition in the state district court and then appealed the denial to the Nevada Supreme Court. The Nevada Supreme Court's decision was a decision on appellate review. That makes a significant difference for the phrase "substantial evidence." At the start of its opinion, the Nevada Supreme Court wrote:

> Brown contends that the district court erred by denying his claims of ineffective assistance of counsel. To state a claim of ineffective assistance of counsel sufficient to invalidate a judgment of conviction, a petitioner must demonstrate that counsel's performance was deficient, and that the petitioner was prejudiced by counsel's performance. *Kirksey v. State*, 112 Nev. 980, 987, 923 P.2d 1102, 1107 (1996) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1987)). To demonstrate prejudice arising from deficient performance of trial counsel, the petitioner "must show a reasonable probability that, but for counsel's errors, the result of the trial would have been different." *Id.* at 988, 923 P.2d at 1107 (citing *Strickland*, 466 U.S. at 694). To demonstrate prejudice arising from deficient performance of appellate counsel, the petitioner "must show that the omitted issue would have a reasonable probability of success on appeal." *Id.* at 998, 923 P.2d at 1114. A petitioner must demonstrate the factual allegation underlying his ineffective assistance of counsel claim by a preponderance of the evidence. *Means v. State*, 120 Nev. 1001, 1012, 103 P.3d 25, 33 (2004). *The district court's factual findings regarding ineffective assistance of counsel are entitled to deference when reviewed on appeal. Riley v. State*, 110 Nev. 638, 647, 878 P.2d 272, 278 (1994).

(ECF No. 14-22 at 2-3 (emphasis added).) *Riley v. State*, which the Nevada Supreme Court cites in the quote above, states:

> Although it is true that "[t]he question of whether a defendant has received ineffective assistance of counsel at trial in violation of the Sixth Amendment is a mixed question of law and fact and . . . thus subject to independent review," *State v. Love*, 109 Nev. 1136, 1138, 865 P.2d 322, 323 (1993), it is also true that purely factual findings of an inferior tribunal regarding a

claim of ineffective assistance are entitled to deference on subsequent review of that tribunal's decision. *See Strickland*, 466 U.S. at 698, 104 S. Ct. at 2070.

*Riley,* 878 P.2d at 278. This is the basic standard of appellate review for claims of ineffective assistance of counsel.[3] If, in this case, the state district court used a substantial evidence standard and then the Nevada Supreme Court summarily affirmed the denial of the petition, then *Hardy* would have application. However, the state district court applied the correct *Strickland* standard. The Nevada Supreme Court did *not* replace that standard with a substantial evidence standard. The Nevada Supreme Court did hold, under the common standard of appellate review, that petitioner had not demonstrated that the state district court's findings were wrong. Regarding the legal conclusions, the Nevada Supreme Court did nothing more than summarily affirm the decision of the state district court. The Nevada Supreme Court's decision was not contrary to *Strickland*. The question then is whether the state courts applied *Strickland* reasonably.

## 2. Ground 2(C)

Ground 2(C) contains two claims. First, petitioner claims that trial counsel provided ineffective assistance because trial counsel did not request a transition instruction that informed the jury how to proceed from first-degree murder to second-degree murder to voluntary manslaughter to involuntary manslaughter. Second, petitioner claims that appellate counsel provided ineffective assistance because appellate counsel failed to challenge the instructions on appeal.

The Nevada Supreme Court held:

Brown claims that trial counsel was ineffective for failing to request a transition instruction that informed the jury on how it should proceed from the consideration of first-degree murder to second-degree murder to voluntary manslaughter to involuntary manslaughter during its deliberations. Brown further asserts that appellate counsel was ineffective for failing to raise this issue on direct appeal. In support of his claim, Brown cites to *Green v. State*, 119 Nev. 542, 548, 80 P.3d 93, 97 (2003), in which we held that "when a transition instruction is warranted, the district court must instruct the jury that it may consider a lesser-included offense if, after

---

[3]The appellate court in *Hardy* itself used that standard of review on appeal from the decision of the district court. *Hardy,* 849 F.3d at 818.

first fully and carefully considering the primary or charged offense, it either (1) finds the defendant not guilty, or (2) is unable to agree whether to acquit or convict on that charge."

The district court found that this case was different than *Green* because no transition instruction was given at all and the jury was free to consider the various offenses in any order without any restrictions. The district court was not persuaded by the evidence that trial counsel was required to request a transition instruction. And the district court found that "any claim of prejudice from the lack of an explicit instruction is far too speculative to warrant relief in this collateral attack."

Brown has not demonstrated that the district court's findings are not supported by substantial evidence or are clearly wrong, nor has he shown that this issue would have had a reasonable probability of success on appeal. Therefore, we conclude that Brown has not established that trial and appellate counsels' performance were deficient and the district court did not err by denying this claim.

(ECF No. 14-22, at 5-6.) The state district court held:

In a related vein, Brown contends that trial counsel was ineffective in failing to raise an objection concerning the instructions governing the transition between greater and lesser offenses. The court notes that *Green v. State*, 119 Nev. 542, 80 P.3d 93 (2003) is distinguishable. In *Green*, the trial court gave an instruction that precluded consideration of the lesser offenses unless the jury first acquitted on the greater offense. In contrast, in this case, there was no instruction at all on the subject and the jury was free to consider the various offenses in any order, with no restrictions. The court is not persuaded by the evidence that some objective standard of reasonableness required trial counsel to request the type of instruction approved in *Green*. The court further finds that any claim of prejudice from the lack of an explicit instruction is far too speculative to warrant relief in this collateral attack.

(ECF No. 14-17 at 8-9.) In *Green v. State,* the trial judge instructed the jury that they must first unanimously acquit Green of the charged crime—aggravated stalking—before considering the lesser included crime—misdemeanor stalking. *Green,* 80 P.3d 93, 96 (Nev. 2003). The Nevada Supreme Court held that those instructions were erroneous and that the trial court should have given the jury an "unable to agree" instruction. "Consistent with this approach, *when a transition instruction is warranted*, the district court must instruct the jury that it may consider a lesser-included offense if, after first fully and carefully considering the primary or charged offense, it either (1) finds the defendant not

///

///

guilty, or (2) is unable to agree whether to acquit or convict on that charge." *Id.* (footnote omitted) (emphasis added).[4]

However *Green* itself does not establish when a transition instruction is required. The Court has been unable to find an answer in Nevada case law. Petitioner himself has not alleged any facts indicating that a transition instruction was required in this case. Counsel might have had a reasonable explanation why he would not want to ask for a transition instruction—even with the "unable to agree" approach, the instruction still tells jurors to consider the charge of first-degree murder first. Counsel argued at length that the jury should find petitioner guilty of voluntary manslaughter. He reasonably could have hoped that the jury would consider voluntary manslaughter first, find petitioner guilty, and then decide that he was not guilty of the greater charges. Likewise, appellate counsel— who was the same person as trial counsel—reasonably could have determined that a transition instruction was not necessary in this case.

Finally, the Nevada Supreme Court reasonably could have concluded that petitioner had not demonstrated a reasonable probability of a better result, based upon the verdict. The jury found petitioner guilty of first-degree murder. If the trial court had given the transition instruction, then the jury would have considered the charge of first-degree murder first, and they still would have found petitioner guilty. Petitioner has not established that the Nevada Supreme Court's finding that the district court properly concluded that the results of the proceedings would not have been different had the transition instruction been included to be unreasonable. Petitioner suffered no prejudice from counsel not asking for a transition instruction.

The state courts' denial of petitioner's claim of ineffective assistance of counsel was not unreasonable. Habeas corpus relief will be denied with respect to Ground 2(C).

///

///

---

[4]The Nevada Supreme Court ultimately determined that the error was harmless. *Green,* 80 P.3d at 97.

### 3. Ground 2(E)

Ground 2(E) contains two claims. First, petitioner argues that trial counsel provided ineffective assistance because trial counsel failed to request a jury instruction on the definition of manslaughter, the difference between involuntary and voluntary manslaughter, and on the "heat of passion." Second, petitioner argues that appellate counsel provided ineffective assistance because appellate counsel failed to challenge the instructions on appeal. The Nevada Supreme Court held:

> Brown claims that trial counsel was ineffective for failing to ensure that the jury was instructed on the definition of manslaughter, the difference between voluntary and involuntary manslaughter, and "the State's burden to prove beyond a reasonable doubt that [he] did not act in the heat of passion with the requisite legal provocation." Brown argues that trial counsel was ineffective because he was unaware of standing law and did not attempt to have the jury properly instructed and that appellate counsel was ineffective because he failed to raise this issue on direct appeal. In support of his claim, Brown cites to *Mullaney v. Wilbur*, 421 U.S. 684, 704 (1975), in which the Supreme Court held "that the Due Process Clause requires the prosecution to prove beyond a reasonable doubt the absence of the heat of passion on [sic] sudden provocation when the issue is properly presented in a homicide case," and *Crawford v. State*, 121 Nev. 744, 754, 121 P.3d 582, 589 (2005), in which we held "that where a defense theory of voluntary manslaughter is properly at issue in a homicide case, a district court should provide upon request accurate and complete instructions setting forth the State's burden to prove the absence of heat of passion upon sufficient provocation unless that principle of law is fully, accurately, and expressly stated in the other instructions."
>
> The record on appeal reveals that the jury was instructed on voluntary manslaughter and the provocation necessary to reduce murder to voluntary manslaughter, but it was not instructed on involuntary manslaughter. The district court found that there was "virtually no chance that a jury could have found manslaughter based on the evidence adduced at trial." Citing to *Doyle v. State*, 116 Nev. 148, 156, 995 P.2d 465, 470 (2000), the district court further found that trial counsel was not ineffective for failing to anticipate our holding in *Crawford*. Brown has not demonstrated that the district court's findings are not supported by substantial evidence or is clearly wrong. Therefore, we conclude that Brown has not established that he was prejudiced by trial and appellate counsels' performance that the district court did not err by denying this claim.

(ECF No. 14-22 at 4-5.) In the order denying the state post-conviction petition, the state district court summarized the evidence of the case:

> A bit of history is appropriate before addressing the various claims in the petition. Christopher Brown shot and killed Corey Jackson. He claimed that Jackson pointed a gun at him and tried to shoot him, but failed. Brown

claimed that he then took the gun from Jackson, knocked Jackson to the ground, pointed the gun, fired and killed Jackson. . . . Other evidence showed that he had fired at least five times. . . . Furthermore, there was evidence that Brown chased down the now-unarmed Jackson and killed the fleeing man. . . . Immediately after the killing he was sufficiently aware of the significance of his acts that he climbed into a van and drove away. He tossed the gun out of the window of the vehicle and then fled to Oakland, California.

At trial on the charge of murder, Brown defended on a theory that was an amalgam of self-defense and heat of passion. He urged the jury to believe his video-taped statements to police and conclude that he intentionally killed Jackson, but that the homicide was either justified as self-defense or the product of provocation.

(ECF No. 14-17 at 3 (citations omitted).) On voluntary manslaughter, the state district court held:

The court also finds that the trial evidence did not support the claim of heat of passion. The theory is not available any time a killer is angry. Instead, manslaughter requires a serious and highly provoking injury or insult and that must be sufficient to excite an *irresistible* passion in a *reasonable* person. The court finds virtually no chance that a jury could have found manslaughter based on the evidence adduced at trial. Accordingly, the claim that counsel was ineffective in failing to request an instruction concerning the burden of proof does not warrant relief.

(ECF No. 14-17 at 8 (emphasis in original).) Under state law, involuntary manslaughter is

the killing of a human being, without any intent to do so, in the commission of an unlawful act, or a lawful act which probably might produce such a consequence in an unlawful manner, but where the involuntary killing occurs in the commission of an unlawful act, which, in its consequences, naturally tends to destroy the life of a human being, or is committed in the prosecution of a felonious intent, the offense is murder.

NRS § 200.070.

Petitioner could not be convicted of involuntary manslaughter based on the evidence in the case. To the extent that petitioner argues that counsel should have requested an involuntary-manslaughter instruction, or raised the lack of an involuntary-manslaughter instruction on appeal, the Nevada Supreme Court reasonably could have concluded that this claim was without merit. Regarding *Crawford v. State*, petitioner was tried in February 2005. *Crawford v. State* was decided on October 20, 2005. *Crawford,* 121 P.3d 582. The Nevada Supreme Court reasonably could have concluded that counsel could not be faulted for not anticipating *Crawford*. What is left of ground 2(E) is a claim

that counsel should have requested an instruction that the prosecution must prove beyond a reasonable doubt that petitioner did not act in the heat of passion. However, as respondents note, the instructions taken as a whole, including the instruction defining malice, inform the jury on the elements of voluntary manslaughter. (*See, e.g.*, ECF No. 13-22 (instructions 15, 16, 19, 25, and 26).) The Nevada Supreme Court reasonably could have concluded that the lack of a request for an instruction that the state must prove that petitioner did not act in the heat of passion was not ineffective assistance of counsel.

The state courts' denial of petitioner's claim of ineffective assistance of counsel was not unreasonable. Habeas corpus relief will be denied with respect to Ground 2(E).

### 4. Ground 2(F)

Ground 2(F) contains two claims. First, petitioner argues that trial counsel provided ineffective assistance because trial counsel failed to object when the prosecutor commented on petitioner's invocation of his Fifth Amendment rights. Second, petitioner argues that appellate counsel provided ineffective assistance because appellate counsel failed to raise this issue on appeal. On this issue, the Nevada Supreme Court held:

> Brown claims that trial counsel was ineffective for failing to object to the prosecutor's questions regarding his invocation of his constitutional right to remain silent. Brown asserts that the prosecutor deprived him of a fair trial by eliciting testimony that he exercised his right to remain silent when Reno Police Department detectives attempted to interview him in California. Brown cites to *McGee v. State* for the proposition that "[i]t is well settled that the prosecution is forbidden at trial to comment upon an accused's election to remain silent following his arrest and after he has been advised of his rights as required by *Miranda v. Arizona*, 384 U.S. 436 (1966)." 102 Nev. 458, 461, 725 P.2d 1212, 1217 (1986).
>
> During the trial, while the prosecutor questioned Detective Jim Duncan about his first meeting with Brown in California, the following colloquy occurred:
>
> Q     All right. Did he agree to talk with you?
> A     No.
> Q     What did he tell you?
> A     He said he would rather speak with an attorney before he talked to us.
> Q     Okay. So you terminated the interview at that point?
> A     Yes, sir.
>
> During the evidentiary hearing, trial counsel testified that he anticipated that the prosecutor would ask Detective Duncan about whether Brown had

invoked his Fifth Amendment right to remain silent. When asked why he did not object to this question, trial counsel stated: "I don't know why I didn't object, I do think it was a passing reference, and ultimately, Mr. Brown did speak to the police." Thereafter, the district court found that there was no further mention of Brown's invocation of his right to remain silent, no argument suggesting that the jury should draw any inference from that comment, and no relief was warranted because any claim of prejudice was too speculative.

Although the comment was improper, under these circumstances the error was harmless. *See Sampson v. State*, 121 Nev. 820, 831-32, 122 P.3d 1255, 1262 (2005). Brown has not demonstrated that the district court's finding is not supported by substantial evidence or is clearly wrong. Therefore, we conclude that Brown has not established that he was prejudiced by trial and appellate counsel's performance and the district court did not err by denying this claim.

(ECF No. 14-22 at 7-8.) The state district court held:

Supplemental Ground One asserts that trial counsel should have objected when a witness mentioned that Brown asserted his right to counsel when he was first approached by police. There was no further motion and there was no argument suggesting that the jury should draw any inference from that comment. Thus, under the analysis of *Strickland*, quoted above, no relief is warranted because any claim of prejudice is too speculative. The court also finds that it is not persuaded that counsel's failure to object to the passing reference fell below any objective standard of reasonableness.

(ECF No. 14-17 at 7.) Given that petitioner spoke to the police both on the drive back to Reno and then in the police station in Reno, and that the prosecution introduced those statements into evidence, the Nevada Supreme Court reasonably could have concluded that petitioner suffered no prejudice even though counsel did not object to the question or raise the matter on appeal.

One fact that neither the Nevada Supreme Court nor the state district court mentioned was that the defense, not the prosecution, first mentioned that petitioner asked to speak with an attorney. In the opening statements, the prosecution noted that the police asked to speak with petitioner, but petitioner "asked to clear up some things," and the police then returned in December. (ECF No. 13-16 at 4-5.) Then the defense said:

They went to the interview room and met with Christopher Brown. And Mr. Duncan will testify that when he met Mr. Brown on that day, Mr. Brown cried early on. And Christopher Brown told them that he would like to talk but it was important and *therefore he wanted to speak to a lawyer* and that he never meant to be in this position.

(ECF No. 13-16 at 7 (emphasis added).) The Nevada Supreme Court reasonably could have concluded that petitioner suffered no prejudice from the lack of objection to the prosecution's question because the defense put that information out first.[5]

The state courts' denial of petitioner's claim of ineffective assistance of counsel was not unreasonable. Habeas corpus relief will be denied with respect to Ground 2(F).

### 5. Ground 2(H)

Ground 2(H) contains two claims. First, petitioner argues that trial counsel provided ineffective assistance because trial counsel failed to request a jury instruction on the care that the jury should take when weighing the testimony of drug-addict witnesses. Second, petitioner argues that appellate counsel provided ineffective assistance because appellate counsel failed to raise an issue regarding the deficient instructions. On these claims, the Nevada Supreme Court held:

> Brown claims that trial counsel was ineffective for failing to request an instruction on the care that the jury should take when weighing the testimony of drug addict witnesses. In support of his claim, Brown cites to *Champion v. State*, where we held that "[w]hen the State adduces testimony by an addict-informer, the defendant is entitled to careful instructions cautioning the jury of the care which must be taken in weighing such testimony." 87 Nev. 542, 543, 490 P.2d 1056, 1057 (1971) (internal quotation marks and citation omitted), *distinguished by King v. State*, 116 Nev. 349, 998 P.2d 1172 (2000). Brown further asserts that appellate counsel was ineffective for failing to raise this issue on direct appeal.
>
> The district court found that "[w]hile there was evidence that various witnesses had used drugs, there was no evidence that any witness was an addict or an informant. The various witnesses were percipient witnesses who were not acting as police agents when they made their observations." Citing to *Browning v. State*, the district court further determined that under these circumstances, "a general instruction concerning the weight and credibility of witnesses, coupled with the opportunity to cross-examine and to argue, [was] enough." 120 Nev. 347, 367, 91 P.3d 39, 53 (2004). Brown has not demonstrated that the district court's finding is not supported by substantial evidence or is clearly wrong. Therefore, we conclude that Brown has not shown that trial and appellate counsel's performance were deficient and the district court did not err by denying this claim.

(ECF No. 14-22 at 6-7.) No evidence was presented that the witnesses at issue received immunity, pay, or lesser charges in exchange for their testimonies. Consequently, they

---

[5]Petitioner does not claim that trial counsel provided ineffective assistance by telling the jury in the opening statement that petitioner asked to speak with an attorney.

16

1    were not informers within the understood meaning of the term. Under these

2    circumstances the Nevada Supreme Court reasonably could have concluded that trial

3    counsel did not provide ineffective assistance by not requesting the addict-informer

4    instruction. The Court will deny corpus relief with respect to Ground 2(H).

5                      **6.      Ground 2(I)**

6           Ground 2(I) has two claims. First, petitioner argues that trial counsel provided

7    ineffective assistance because trial counsel failed to object to improper demonstrative

8    evidence—a mannequin—and prejudicial autopsy photographs. Second, petitioner

9    argues that appellate counsel provided ineffective assistance because appellate counsel

10   failed to raise this issue on appeal. On this issue, the Nevada Supreme Court held:

> Brown claims that trial counsel was ineffective for failing to object to the
> inappropriate amount of time that the prosecutor's autopsy photographs
> were displayed before the jury and to the prosecutor's use of a mannequin
> as demonstrative evidence. Brown asserts that "use of a mannequin which
> was displayed to the jury with objects that looked like pencil sticking out of
> the mannequin was cumulative evidence and intended to provoke the jury
> and inflame the passions of the jury rendering its decision." Brown argues
> that trial counsel should have objected to the use of this type of evidence
> and appellate counsel should have raised this issue on direct appeal.
>
> The district court found that the claim regarding the autopsy photographs
> was speculative and insufficient to warrant relief and that any objection to
> the use of the mannequin would have been futile because it was used to
> show the angle that the bullets entered the victim's body so as to
> demonstrate the sequence of events. The district court specifically found
> that this evidence "had great probative force." Brown has not demonstrated
> that the district court's findings are not supported by substantial evidence or
> are clearly wrong. Therefore, we conclude that Brown has not established
> that trial and appellate counsel's performance were deficient and the district
> court did not err by denying this claim.

22    (ECF No. 14-22 at 9.)

23          Petitioner did not dispute that he shot the victim, but he did dispute how and why

24   he shot the victim. Petitioner's statement was that he took the gun from the victim, fired,

25   and ran away. (ECF No. 13-20 at 8.) The prosecution had the burden of proving all the

26   elements of the offense, which necessarily included proving how petitioner's statement

27   could not be true. The photographs and the mannequin could prove that petitioner did not

28   act as he said, but that he aimed at the victim and also shot the victim from above after

17

the victim had fallen to the ground. At the state-court evidentiary hearing, trial counsel called that evidence prejudicial but admissible. (ECF No. 29 at 9-11.) Prejudice, in that context, did not mean that the evidence was inadmissible but that the evidence was strong enough to disprove petitioner's version of events in his police statement. Under those circumstances, the Nevada Supreme Court reasonably could have concluded that the lack of objection was not ineffective assistance of counsel. The Court will therefore deny habeas relief with respect to Ground 2(I).

### C.    Ground 3

Ground 3(B) is a claim that the trial court erred when it improperly instructed the jury on the definition of manslaughter, the difference between involuntary and voluntary manslaughter, and on the "heat of passion" theory. This ground is procedurally defaulted. Petitioner argued that the ineffective assistance of trial counsel and appellate counsel excuse the procedural default. The Court has ruled that those ineffective-assistance claims, contained in ground 2(E), are without merit. Consequently, petitioner has not demonstrated that the procedural default of ground 3(B) should be excused.

Ground 3(D) is a claim that the trial court erred when it failed to provide a transition instruction that informed the jury how to proceed from first-degree murder to second-degree murder to voluntary manslaughter to involuntary manslaughter. This ground is procedurally defaulted. Petitioner argued that the ineffective assistance of trial counsel and appellate counsel excuse the procedural default. The Court has ruled that those ineffective-assistance claims, contained in ground 2(C), are without merit. Consequently, petitioner has not demonstrated that the procedural default of ground 3(D) should be excused.

### D.    Ground 4

Ground 4 is a claim that the trial court erred in denying petitioner's motion to suppress his statements, and the statements were admitted into evidence in violation of the Fifth and Fourteenth Amendments. On this issue, the Nevada Supreme Court held:

///

Next, Brown contends that the district court erred in denying his pretrial motion to suppress inculpatory statements he made to Reno Police Department detectives. On October 7, 2003, Detectives Dan Myers and Jim Duncan traveled to Oakland, California, where Brown had been apprehended and arrested on unrelated charges. When the detectives met with Brown, even before they could advise him of his rights pursuant to [*Miranda v. Arizona*, 384 U.S. 436 (1966)], Brown invoked his right to counsel and refused to speak. Accordingly, the detectives terminated the interview and returned to Reno.

On December 23, 2003, Detectives Myers and Duncan returned to California in order to transport Brown to Reno on the murder warrant. Immediately prior to the trip, the detectives advised Brown about the extradition procedures and his rights pursuant to *Miranda*. The discussion was audiotaped. During the initial part of the trip, the two detectives and Brown discussed neutral topics such as sports and the weather; there was no discussion about the investigation. At a certain point, however, Brown asked the detectives, "How is Dude's family taking it?" Brown clarified that he was referring to the victim of the shooting. At the hearing on Brown's motion to suppress, the following exchange occurred between Detective Duncan and the prosecutor:

> A.     Well, I told him I had spoken several times with [the victim's] sister, that's the only family member I've spoken with, and she was very hurt, and very broken up by his death. And I said she had a lot of unanswered questions, I said I have a lot of unanswered questions. I said I only know what I've learned to this point, and I have lots of questions for you, but you certainly don't have to speak with me if you don't want to.
>
> Q.     All right. What did he say when you told him that?
>
> A.     He said, "Feel free."
>
> . . .
>
> I asked him, "Tell me what happened, because I'm under the impression —" I told him I'm under the impression, based on the conversation I had with your girlfriend, or the mother of one of his children, that he had told her it was a self-defense shooting. And I said, "If that's the case, I'd certainly like to hear it. If you want to tell me your version, tell me your version." And he did, he started and talked for about 90 minutes.

Detective Duncan testified that the conversation was mostly a monologue conducted by Brown, and that Brown never asked for an attorney or indicated that he did not want to talk about the case. Upon returning to Reno, Brown gave a videotaped statement repeating the inculpatory statements. Brown informed the detectives that he wanted to tell his version of the incident "because the stuff is eating me up inside." On October 28, 2004, the district court entered an order denying Brown's motion to suppress the inculpatory statements he made while traveling from California to Reno and in the videotaped statement.

Citing to *Edwards v. Arizona* for support, Brown argues that because he invoked his right to counsel when the detectives first met him in October of 2003, the State therefore cannot demonstrate that he waived that right "by showing only that he responded to further police-initiated custodial interrogation" nearly three months later. Brown claims that the Reno detectives improperly initiated contact and violated *Edwards* when they Mirandized him immediately prior to transporting him from California. As a result, Brown contends that the district court erred in failing to suppress his inculpatory statements. We disagree with Brown's contention.

In *Edwards*, the United States Supreme Court stated that "an accused, . . . having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities . . . *unless the accused himself initiates further communication, exchanges, or conversations with the police*." [emphasis added] The United States Court of Appeals for the Ninth Circuit added that the *Edwards* line of cases "recognize that the accused may change [his] mind and initiate communication. It is a factual question whether that is what occurred."

Here, we conclude that there was substantial evidence to support the district court's finding that Brown, not the detectives, initiated the discussion about his case when he asked about the victim's family. Brown provides no authority for the proposition that being Mirandized, by itself, amounts to police-initiated custodial interrogation in violation of *Edwards*. The detectives merely informed Brown about the extradition procedures, which included advising him of his rights pursuant to *Miranda*. The detectives also testified at the suppression hearing that they were careful not to discuss any aspect of Brown's case during the trip and they made no attempt to elicit incriminating information; instead, the discussion among the three focused on neutral topics. Brown was aware of his right to remain silent; nevertheless, he initiated conversation about the case. We conclude that the district court did not err in so ruling.

Finally, we conclude that the district court did not err in finding that Brown voluntarily and knowingly waived his right to counsel prior to making the incriminating statements. The Supreme Court stated that *Edwards* was "designed to prevent police from badgering a defendant into waiving his previously asserted *Miranda* rights." Determining whether the waiver was valid requires a review of the "'particular facts and circumstances'" of a case. This court has stated that "[a] valid waiver of a fundamental constitutional right ordinarily requires 'an intentional relinquishment or abandonment of a known right or privilege.'" For the waiver to be valid, it must be (1) "the product of a free and deliberate choice rather than intimidation, coercion, or deception," and (2) "made with full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it."

As discussed above, Brown initiated the discussion about his case by asking about the victim's family. Detective Duncan told Brown he had "lots of questions for him," but reminded Brown that he did not have to speak to him. At that point, Brown waived his right to counsel when he responded to Detective Duncan by stating, "Feel free." There is no indication in the record that the detectives coerced or intimidated Brown while they were in transport or when Brown made his formal, videotaped statement in Reno. In fact, the district court found that while Brown was recording his statement,

the detectives provided Brown with "breaks, refreshments, and the use of the facilities." Further, the record demonstrates that Brown understood the right he was waiving and its consequences. Prior to transporting Brown from California, an audiotape recording was made of the detectives advising Brown of his rights pursuant to *Miranda*, which Brown indicated he understood. Additionally, Brown understood that he was being charged with murder. Therefore, based on all of the above, we conclude that the district court did not err in denying Brown's motion to suppress.

(ECF No. 14-11 at 5-10) (footnotes omitted).)

The Nevada Supreme Court and the state district court identified the correct governing case, *Edwards v. Arizona*, 451 U.S. 477 (1981). The state courts' findings were not unreasonable in light of the evidence presented at the suppression hearing. The application of *Edwards* was not unreasonable. Petitioner argues that he testified that he did not initiate the discussion of the crime, but he has not shown how the district court's decision to believe the detectives, and not him, was unreasonable.

Respondents point the Court to a Supreme Court decision made subsequent to the direct appeal, *Maryland v. Shatzer*, 559 U.S. 98 (2010). *Shatzer* held that when there was a 14-day break in *Miranda* custody, the *Edwards* presumption no longer applies. *Id.* at 110-11. For a person who is in prison on an unrelated sentence, as Shatzer was, that means returning to his normal level of custody. Similarly, petitioner was arrested in Oakland, California, on a matter unrelated to the murder case at issue. Reno detectives went to Oakland to interview petitioner, and petitioner said that he wanted an attorney. The detectives returned to Reno, and petitioner returned to his normal level of custody. When the Oakland sentence finished around three (3) months later, the *Edwards* presumption would have long since terminated.

The Nevada Supreme Court's decision could not have relied upon *Shatzer* because it decided petitioner's direct appeal years before *Shatzer* was decided. However, before *Shatzer* was decided, the duration of the *Edwards* presumption had been an open question. The Supreme Court noted in *Shatzer*, "Lower courts have uniformly held that a break in custody ends the *Edwards* presumption, . . . but we have previously addressed the issue only in dicta." *Shatzer*, 559 U.S. at 105. In other words, before *Shatzer,* the

Supreme Court had not clearly established whether a break in custody ended the *Edwards* presumption, nor had the Supreme Court clearly established how long the break in custody needed to be. For this alternative reason, the Nevada Supreme Court's ruling could not have been contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court. *Carey v. Musladin,* 549 U.S. 70, 77 (2006).

The Court will deny habeas relief with respect to Ground 4.

### E.    Ground 6

Ground 6 is a claim that the cumulative effect of trial and appellate counsel's errors deprived petitioner of his right to a fair trial. The Nevada Supreme Court held:

> Brown claims that there was cumulative error warranting the reversal of his conviction. Brown asserts that he "proved by a preponderance of the evidence that the jury was not properly instructed, prejudicial evidence was improperly admitted, the passions of the jury were inflamed, the State improperly commended upon [his] invocation of constitutional rights, and that his trial was reduced to a sham." Brown cites to *Homick v. State* for the proposition that "[i]f the cumulative effect of errors committed at trial denies the appellant of his right to a fair trial, this court will reverse the conviction." 112 Nev. 304, 316, 913 P.2d 1280, 1288 (1996). However, Brown has failed to show that trial and appellate counsel were ineffective and therefore he has failed to demonstrate cumulative error warranting a reversal of his conviction.

(ECF No. 14-22 at at 9-10.) Given that the Nevada Supreme Court found no error in claims of ineffective assistance of counsel, it reasonably could have found that there was no cumulative error. Accordingly, the Court will deny habeas relief with respect to Ground 6.

## IV.    CERTIFICATE OF APPEALABILITY

This is a final order adverse to the petitioner. As such, Rule 11 of the Rules Governing Section 2254 Cases requires this Court to issue or deny a certificate of appealability (COA). Accordingly, the Court has *sua sponte* evaluated the claims within the petition for suitability for the issuance of a COA. *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864-65 (9th Cir. 2002).

///

Pursuant to 28 U.S.C. § 2253(c)(2), a COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right." With respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)).

Having reviewed its determination and rulings in adjudicating the petition, the Court finds that reasonable jurist might find that this Court's determination that *Hardy* is not applicable to be debatable or wrong. The Court therefore will grant a certificate of appealability as to the Court's decision that *Hardy* does not apply here. Further, reasonable jurists would not find the Court's decisions on the claims and other issues, including the Court's previous dismissal of the procedurally defaulted grounds, to be debatable or wrong, and the Court will not issue a certificate of appealability for these claims and grounds.

## V.     CONCLUSION

It is therefore ordered that the first amended petition (ECF No. 12) is denied. The Clerk of the Court will enter judgment accordingly and close this action.

It is further ordered that a certificate of appealability is granted as to the Court's determination that *Hardy* does not apply. A certificate of appealability is otherwise denied.

DATED THIS 30th day of March 2018.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE